AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
2308 Johnson Place
Richmond, VA 23223

Case No. 3:17SW261

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporated by reference herein

located in the Eastern District of Virginia, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B, incorporated by reference herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 United States Code 841(a)(1) | Distribution of Heroin, a Schedule I controlled substance |

The application is based on these facts:
See attached affidavit, incorporated by reference herein

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Tiffani L. Corley, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 8, 2017

[signature]
*Judge's signature*

City and state: Richmond, Virginia

ROBERT E. PAYNE
*Printed name and title*

AFFIDAVIT IN SUPPORT OF

**AN APPLICATION FOR A SEARCH WARRANT**

I, Tiffani L. Corley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am presently employed as a Special Agent ("SA") for the United States Drug Enforcement Administration ("DEA"). I have been employed full-time by the DEA since March 2005, currently assigned to the Richmond District Office ("RDO"), and have been so employed for over 12 years.

3. Prior to becoming an agent, I completed the DEA Basic Agent Training course in Quantico, Virginia, a seventeen-week intensive drug law enforcement training program. DEA training focuses on, among other things: confidential informant (CI) management, interviews of suspects and defendants, report writing, physical and electronic surveillance, tactics, the preparation of wiretap affidavits and search warrants, and drug identification. After graduation, I successfully completed a sixteen-week field training program at my first office of assignment. During my time as a Special Agent, I have participated in investigations involving the unlawful importation, exportation, manufacture, possession with intent to distribute and distribution of narcotics, the laundering of narcotics proceeds, monetary instruments derived from narcotics activities, and conspiracies associated with narcotics offenses. I have participated in numerous

narcotics investigations with more experienced SAs and Task Force Officers ("TFOs") within DEA.

4. Through my training, experience, and interaction with other SAs, TFOs, and other narcotics investigators, I have become familiar with the methods employed by narcotics trafficking organizations to smuggle, safeguard, and distribute narcotics, and to collect and launder narcotics related proceeds. These methods include (but not limited to) the use of debit calling cards, public Wi-Fi hotspots, wireless communications technology (such as smartphone apps, voice over ip phones, and cellular telephones), counter surveillance, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities and coded communications in an attempt to avoid detection by law enforcement and circumvent narcotics investigations.

5. I have been involved in the preparation and service of California state and federal search warrants at numerous locations throughout the United States of America. At many of the locations I have seized controlled substances including (but not limited to) cocaine, methamphetamine, MDMA, heroin, and marijuana. I have also seized many non-drug items, which include vehicles used to facilitate drug trafficking, narcotics proceeds, drug pay and owe sheets, telephone directories and toll records. I have interviewed many of the suspects at these locations, and I have learned of the methods and operations of the drug trafficking organizations.

6. In December 2010, I received eight hours of California state wiretap training, analyzing phone tolls, writing and serving subpoenas, writing both state and federal affidavits, analyzing line sheets for pertinent criminal information, and minimization. I have also participated in several California state and federal wiretaps in the capacity of presenting evidence to magistrates for sealing, monitoring phone lines, and writing 15-day reports.

7. In addition, I am familiar with narcotic traffickers' methods of operation including the distribution, storage, and transportation of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. I am aware narcotics traffickers often communicate with their drug trafficking associates through the use of many communications devices such as home telephones, cell phones, and social media applications. I am aware drug traffickers will often change cellular telephones and account screen names to avoid detection by law enforcement. It has been my experience that narcotics traffickers will also use residential telephones, cellular telephones, and social media web sites that are not subscribed to their own names or addresses, as well as change these accounts frequently. They do this in order to avoid detection by law enforcement.

8. It has been my experience that narcotics traffickers will also use registered vehicles, utilities, cellular telephones, and social media web sites that are not subscribed to their own names or addresses. They do this in order to avoid detection by law enforcement. It has also been my experience that narcotics traffickers keep and store drug packaging and paraphernalia, records, documents, cash, photographs, and firearms in their personal residences to further their drug trafficking activities.

9. I have interviewed numerous criminals regarding the transportation and sales of narcotics. During many of these investigations, the criminals have admitted to their utilization of telephones, social media web sites, the utilization of stash locations, and methods of distribution. I know from my training and experience in the field of narcotics that subjects involved in the crimes of possession with intent to distribute controlled substances will often utilize telephones and social web pages to arrange their crimes or coordinate with co-conspirators and customers.

10. The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) have been committed by Terrell HARGROVE (HARGROVE). There is also probable cause to search the location described in Attachment A for evidence of these crimes, as described in Attachment B.

**DESCRIPTION OF RESIDENCES TO BE SEARCHED**

12. This affidavit is made in support of a search warrant for the residence (s) located at:

**2308 Johnson Place**
**Richmond, VA 23223**

13. `I present this affidavit in support of a SEARCH WARRANT for 2308 Johnson Place, Richmond, VA 23223 (**TARGET RESIDENCE**), to include the entire dwelling and any detached sheds, garages or storage structures within the curtilage. The structure is described as a single home dwelling with tan siding. This building is a single-storied property with a grass yard surrounding it and a gravel driveway leading to the north side of the residence. The number "2308" is clearly affixed to the outside front of the front pouch. This dwelling is located in the Eastern District of Virginia.

**PROBABLE CAUSE**

14. The information contained within this affidavit is based on my personal experience, as well as on information provided to me by other federal agents, local police officers, and confidential sources. Based on this information, there exists probable cause to

believe that HARGROVE utilizes the aforementioned residence as a part of a distribution network for heroin, wherein he distributes illegal narcotics and stores proceeds from the distribution of illegal narcotics, packaging materials, drug paraphernalia, records, and documents that may constitute evidence of criminal activities.

15. This investigation started in September 2017, when Richmond Police Department (RPD) initiated a drug investigation into the heroin trafficker identified as Terrell HARGROVE. HARGROVE is a known drug trafficker in the Richmond metropolitan area, Date of Birth: X/XX/1984. RPD developed a Confidential Source (CS) who was able to purchase ounce quantities of heroin from HARGROVE. The CS, at the direction of RPD, made controlled purchases of heroin from HARGROVE.

16. In September 2017, TFO Philips searched criminal records for HARGROVE and discovered that HARGROVE was on federal supervised release and contacted HARGROVE's Federal Probation Officer. The officer informed TFO Philips that HARGROVE was in fact on supervised release and listed the **TARGET RESIDENCE** as his place of residence. The Probation Officer also confirmed that he has conducted residence checks at the **TARGET RESIDENCE**.

**Summary of Controlled Purchases**

17. On September 29, 2017, at approximately 2:00pm, the CS was searched for weapons or drugs by RPD Officer Adams and nothing was found. The CS stated that he/she had spoken to HARGROVE on his cell phone (804-779-9809) and HARGROVE would have ½ ounce of heroin ready for pick-up on that day.

18. At approximately 2:45pm, SA Scanlon observed a white SUV bearing Virginia license plate, WSR-4151, parked in front of the Auto Zone located at 2607 Chamberlayne Ave,

Richmond, VA. At approximately 2:50pm, SA Corley observed the CS, driven by TFO Philips, arrive in the area of 2607 Chamberlayne Ave, Richmond, VA. TFO Philips positively identified HARGROVE while he exited his vehicle wearing a teal baseball cap and blue jeans. SA Burch observed the CS and HARGROVE greet each other outside of the business and enter the front door together. At approximately 2:58pm, the CS returned to the UC vehicle and immediately departed the area. The CS gave SA Corley the heroin that was purchased from HARGROVE as soon as the UC vehicle had returned to the police department. Later that day the CS spoke with SA Corley and TFO Philips regarding the transaction. The CS stated that he/she did not talk to HARGROVE very long because they were in a public place. The CS said that HARGROVE handed him/her the heroin inside the store then departed the store shortly after. Laboratory reports have confirmed the substance was heroin.

19. At approximately 3:02pm, SA Scanlon observed HARGROVE depart the area driving the white SUV. TFO Wallace observed HARGROVE enter the neighborhood of the **TARGET RESIDENCE**. SA Burch confirmed at approximately 3:30 pm, that HARGROVE's vehicle was parked in front of the **TARGET RESIDENCE,** as well as a blue 1994 Cadillac bearing Virginia license plate WNB-2821 (Registered owner was Chiquitta Shantel REID). At approximately 3:30pm surveillance was terminated.

20. On November 2, 2017, at approximately 2:10pm, SA Corley and Officer Poerstel met with the CS to discuss the transaction planned for later that day. The CS stated that he/she had spoken with HARGROVE earlier in the day and he was ready to supply one ounce of heroin to the CS for $2,000. The CS stated that HARGROVE was using a new telephone number, 804-712-1343.

21. At approximately 2:52pm, the CS made a call in the presence of SA Corley and

Officer Poerstel, asking HARGROVE where they should meet. The parties agreed to meet at the 2600 block of Chamberlayne Ave, Richmond, VA. The CS was searched for weapons and drugs prior to the meeting by Officer Poerstel and none were found. The CS was the driven to the pre-arranged meeting location and given a video/audio recording device and $2,000 OAF.

22. At approximately 3:48pm, SA Corley observed HARGROVE arrive in the parking lot of the 2600 block of Chamberlyane Ave, Richmond, VA. HARGROVE was driving a rental vehicle (white Impala bearing Pennsylvania license plate KMS-0651). As soon as the vehicle arrived in the parking lot the CS got into HARGROVE's vehicle. HARGROVE told the CS that he did not have the heroin at that time, and the CS would have to wait until he could get it. The CS told HARGROVE to call him/her when he had it.

23. At approximately 4:13pm, SA Greenway observed HARGROVE arrive at the **TARGET RESIDENCE**. HARGROVE got out of his vehicle, checked the mail, and then walked into the residence. Shortly thereafter surveillance was terminated.

24. On November 3, 2017, at approximately 10:00am, the CS was searched for any weapons or drugs by Officer Poerstel and nothing was found. The CS was given a recording device to record the transaction and $2,000 OAF. The CS placed a phone call in the presence of SA Corley and Officer Poerstel to HARGROVE's cell phone (804-712-1343) at approximately 10:30am. HARGROVE told the CS that he would be on his way soon. Law enforcement drove the CS to the pre-arranged location.

25. At approximately 10:45am, the CS was in the 2600 block of Chamberlayne Ave waiting for HARGROVE to arrive. At approximately 11:10am, Officer Mills observed HARGROVE driving a white Chevy Impala (Enterprise rental vehicle bearing PA license plate KMS-0651) arrive at the **TARGET RESIDENCE** and enter the front door. At approximately

11:33am, Officer Mills observed HARGROVE exit the **TARGET RESIDENCE** and depart the area driving the Impala and wearing a black baseball hat, striped shirt, and black pants.

26. At approximately 11:40am, SA Corley observed HARGROVE arrive in the parking lot at 2600 Chamberlayne Ave, Richmond, VA. HARGROVE exited his vehicle and threw something into the outside trash can and returned to his vehicle. The CS entered the vehicle with HARGROVE for only a few minutes. After the CS emerged from the vehicle HARGROVE departed the area. Following the meet the CS relinquished the suspected heroin to SA Corley. Based on your affiants training and experience, the suspected narcotics match the shape, texture, packaging, color, and consistency of heroin. Surveillance continued on HARGROVE until he arrived at the Gilpin Court public housing complex. Surveillance was terminated at approximately 12:15pm. The CS stated he received suspected heroin from HARGROVE on 11/3/17. (TC)

27. On December 7, 2017, your affiant applied for and received a federal criminal complaint and arrest warrant for one count of distribution of heroin, in violation 21 U.S.C. § 841, from the Honorable Henry E. Hudson.

28. On December 8, 2017, at approximately 12:29 pm, TFO Philips observed HARGROVE arrive at the TARGET RESIDENCE. HARGROVE was driving a Chevy SUV bearing license plate WSR-4151. At approximately 12:43 pm, TFO Philips observed HARGROVE exit the TARGET RESIDENCE wearing all black clothing. HARGROVE entered the white SUV and departed the area.

29. At approximately 1:00 pm, Henrico Police Officer Madeline observed HARGROVE enter the business called Lendmark Financial Services located at 5211 S Laburnum Ave, Richmond, VA. At approximately 1:50 pm, HARGROVE exited the business, at which time he was arrested by Henrico Police Officers Whiting, Jensen, and Gileva based on

the outstanding federal arrest warrant.

30. SA Maine searched HARGROVE following his arrest and found two small plastic baggies containing white powdery substance, which in your affiants training and experience match the shape, texture, packaging, color, and consistency of heroin.

31. Your affiant has knowledge through training and experience that it is common for drug traffickers to have their residences and vehicles registered in names other than their own in an attempt to mask their identity and locations from law enforcement.

32. Your affiant has knowledge through training and experience that drug traffickers often use different addresses as stash locations to hide money, drugs, weapons, ledgers, and other tools of the drug trade to further their criminal enterprises.

33. Your affiant has knowledge through training and experience that it is common for drug traffickers to have cell phone records located at their place of residence that will reveal additional co-conspirators and facilitators of drug trafficking. It is also common for drug traffickers to have vehicle maintenance records located at their residences that reveal repairs and maintenance of vehicles.

**RELIABILITY OF CONFIDENTIAL SOURCES**

34. The CS has provided reliable information in the past that has been corroborated by law enforcement. The CS agreed to cooperate with agents in return for later compensation. The CS has met with law enforcement to place recorded phone calls and has provided information that has initiated investigations on other drug traffickers.

**CONCLUSION**

Thus, based on the foregoing evidence, your affiant respectfully submits that there is a probable cause to believe that Terrell HARGROVE has knowingly distributed heroin in violation

of 21 U.S.C. § 841(a)(1). In addition, it is my belief that evidence of these violations is located in the residence identified above.

WHEREFORE, I respectfully request that a search warrant for these location(s) be issued, authorizing any agent of the Drug Enforcement Administration, with proper assistance, to enter and search the premises for the items described in Attachment "B," all of which are evidence, and fruits and instrumentalities of violations of Title 21, United States Code, sections 841(a)(1).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Tiffani L. Corley
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 8th day of December 2017 in Richmond, Virginia.

ROBERT E. PAYNE
SR. US DISTRICT JUDGE

# ATTACHMENT A

The TARGET RESIDENCE to be searched: 2308 Johnson Place, Richmond, VA 23223 to include the entire dwelling and any detached sheds, garages or storage structures within the curtilage. The structure is described as a single home dwelling with tan siding. This building is a single-storied property with a grass yard surrounding it and a gravel driveway leading to the north side of the residence. The number "2308" is clearly affixed to the outside front of the front pouch. This dwelling is located in the Eastern District of Virginia.

## ATTACHMENT B

1. Drug paraphernalia, including materials for cutting, weighing, and packaging controlled substances.

2. Books, records, receipts, notes, ledgers, and other documents relating to the transportation, ordering, purchasing, and distribution of controlled substances.

3. Personal books and papers reflecting names, addresses, telephone numbers and other contact or identification data relating to the distribution of controlled substances.

4. Cash, currency, and records relating to drug trafficking income, and expenditures of money and wealth, including money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, check registers, and precious metals and gems.

5. Documents indicating interstate and foreign travel, including itineraries, plane tickets, boarding passes, motel and hotel receipts, passports, visas, credit card receipts, and telephone bills.

7. Photographs of confederates, assets or controlled substances, or the spending of drug proceeds.

8. Indicia of occupancy and of ownership of real and personal property.

9. Cellular telephones, pagers, and electronic storage devices.

10. Firearms.